**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| C.R. ENGLAND, INC., | |
| *Plaintiff,* | Civil Action No. 21-264 |
| v. | Section R |
| | Judge Sarah S. Vance |
| JASON F. GILES; THE KING FIRM, LLC; | |
| GILES LAW, LLC; DAMIAN K. | Division 5 |
| LABEAUD; RODERICK HICKMAN; | Magistrate Judge Michael B. North |
| ANTHONY ROBINSON; AUDREY | |
| HARRIS; JERRY SCHAFFER; and | |
| KEISHIRA ROBINSON, | |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS BY THE KING FIRM, LLC**

Defendant, The King Firm, LLC, respectfully submits this memorandum in support of its

motion seeking dismissal of the claims asserted against them by Plaintiff C.R. England, Inc. for

failure to state a claim.

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..............................................................................................2

**BACKGROUND** ....................................................................................................................5

    I. The October 13, 2015 accident and resulting legal proceedings ............................................5

    II. The subsequent federal indictments and guilty pleas.............................................................6

    III. The purported criminal "enterprise" to stage automobile accidents ...................................8

**DISCUSSION** ......................................................................................................................10

    I.  C.R. England has not adequately alleged any Louisiana state-law fraud or conspiracy
    claims. .....................................................................................................................................10

        A. C.R. England's fraud claims fail because it did not rely on the truthfulness of the
        Defendants' purportedly fraudulent allegations—rather, it vigorously contested those
        allegations in litigation, going so far as to make public accusations of fraud. ..................11

        B. C.R. England's state-law conspiracy claims must be dismissed for failure to
        adequately allege any underlying tort. ................................................................................14

    II. C.R. England has not adequately alleged any civil RICO claims. ....................................14

A. C.R. England has not adequately alleged direct and proximate causation because no one was defrauded by the alleged predicate acts of mail fraud and wire fraud. ................16

B. C.R. England has not adequately alleged a "pattern of racketeering activity" ............18

    1. C.R. England has not adequately alleged any predicate acts of wire fraud. ............19

    2. Even assuming that C.R. England has adequately alleged two acts of mail fraud in connection with the Harris lawsuit, that is insufficient as a matter of law to demonstrate a "pattern of racketeering activity." ........................................................20

C. C.R. England has not adequately alleged the existence of a RICO "enterprise." .........23

    1. An "association-in-fact enterprise" must have continuity of structure and personnel, longevity, and an existence that is separate from the alleged racketeering acts that it commits.....................................................................................................................23

    2. C.R. England's factual allegations do not show that the nine Defendants in this case formed an ongoing, long-lived criminal enterprise with continuous structure and personnel—in fact, they affirmatively negate any such inference..............................25

D. C.R. England's RICO conspiracy claim must be dismissed for failure to adequately allege any substantive RICO violation under § 1962(c). ...................................................28

III. C.R. England has not adequately alleged any claims under the Louisiana Racketeering Act....................................................................................................................................28

A. C.R. England has not even attempted to allege any predicate act that would constitute "racketeering activity" under the Louisiana Racketeering Act.........................................30

B. C.R. England has not adequately alleged the existence of a RICO "enterprise." .........30

C. C.R. England's bare-bones allegations, which merely track the statutory language without providing explanation or factual detail, do not adequately allege the other elements of its claims under the Louisiana Racketeering Act. .........................................31

IV. The Settlement of the State Court Lawsuit Bars This Action .........................................32

V. Reconsideration of Extension of the Stay…………………………………………… 35

**CONCLUSION** ..........................................................................................................................**36**

## PRELIMINARY STATEMENT

This lawsuit was filed more than four years ago. It was stayed at the request of the United States Attorney, and the Court recently lifted that stay. In the intervening time, a number of relevant events took place. Among them are the indictment and convictions of defendants Jason Giles, The King Firm, LLC, and others. Giles Law, LLC, a named defendant in this case, was never charged.

This motion is filed only on behalf of The King Firm, LLC. At various times in this memorandum, we will refer to Jason Giles, Giles Law LLC, and The King Firm, LLC as "the Law Firm Defendants" because the plaintiff's lawsuit tends to group them together.

The convictions mentioned are not final. None of the individuals and entities convicted have been sentenced or begun their appeals. Currently the cases mentioned are in the post-trial motion phase. The stay should be reinstated or extended. See Section V. below.

While the lawsuit as filed sets forth a universe of facts that has not remained static, the grounds for dismissal of plaintiff's claims against The King Firm, LLC, do not depend on the presence or absence of these more recent legal events. The plaintiff is suing under particular legal theories with defined terms and burdens of pleading, and external legal proceedings do not substitute for pleading a cause of action under the theories chosen by this plaintiff.

Thus, although the plaintiff's lawsuit has not been amended to recite these more recent events, their omission makes no difference to the outcome of this motion. Even had they been included, this lawsuit must still be dismissed.

## INTRODUCTION

Four plaintiffs who were allegedly involved in an automobile accident with an 18-wheeler on October 13, 2015, and who came to The King Firm seeking representation, later admitted that the accident was staged and that their account of how it occurred was false. C.R. England employed the driver of the 18-wheeler and was named as a defendant in the state-court personal-injury lawsuit arising from the accident. C.R. England contributed money toward the settlement of that lawsuit, after years of discovery and litigation, and despite its own public accusations that the accident was staged and fraudulent.

C.R. England now asserts federal RICO claims, Louisiana Racketeering Act claims, and state-law fraud claims seeking to recover the money it paid to litigate and settle the personal-injury lawsuit.

The claims presented in this lawsuit suffer from legal deficiencies that require their dismissal under Federal Rule of Civil Procedure 12(b)(6). C.R. England's various claims alleging fraud all fail for the simple reason that it never relied on the truthfulness of the allegedly false allegations in the personal-injury lawsuit. Rather, it vigorously contested those allegations through years of litigation and even accused the plaintiffs of fraud before it agreed to settle the case. Nor can C.R. England show that it suffered any harm based on any third party's reliance on the allegedly false allegations.

C.R. England's federal RICO claims also fail because it has not adequately alleged a "pattern of racketeering activity." Notwithstanding its sprawling, repetitious 98-page Complaint, and its 154-page "RICO case statement" that does more to confuse the issues than to elucidate them, C.R. England has not adequately alleged a single act of wire fraud. And the only two acts of mail fraud that are even arguably pleaded with specificity both occurred in the context of a single lawsuit and fail to show any ongoing, continuous pattern of criminal activity.

C.R. England's allegations also fail to establish the existence of the ongoing, continuous criminal "enterprise" necessary to support its RICO claims. This accusation is fatally undermined even by C.R. England's own allegations. C.R. England does not allege that the four claimants in the lawsuit based on the October 13, 2015 accident were ever involved in any other staged accident, before or after. And throughout its Complaint, C.R. England repeatedly, and inconsistently, alleges that the "enterprise" involved a shifting assortment of dozens of other participants.

Finally, in addition to the reasons explained above, C.R. England's claims under the Louisiana Racketeering Act fail because it has not even attempted to identify any act allegedly committed by the Defendants that constitutes "racketeering activity" under the Louisiana statute, or to plead other necessary statutory elements.

**BACKGROUND**

The following factual background is taken from the allegations of C.R. England's Complaint. Additionally, "[f]ederal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *see also Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) ("[C]ourts may also consider matters of which they may take judicial notice."). Pursuant to the controlling legal standard, C.R. England's well-pleaded factual allegations are accepted as true for purposes of this motion.

**I.     The October 13, 2015 accident and resulting legal proceedings**

On October 13, 2015, Anthony Robinson and his wife (Audrey Harris), his daughter (Keishira Robinson), and his friend (Jerry Schaffer) were involved in a collision with an 18-wheeler near the Danziger Bridge. *See* Doc. No. 1 at ¶ 25. Mr. Robinson was allegedly driving a 2002 Chevrolet Tahoe, in which the other three persons were passengers. *See id.* The 18-wheeler was being driven by Ronan Ryan, who was employed by C.R. England. *See id.* at ¶ 8.

Mr. Robinson and the three passengers were referred to The King Firm for representation by Damian Labeaud, who was himself being represented by The King Firm in connection with an earlier automobile accident. *See* Doc. No. 1 at ¶ 65, 16. The alleged driver of the vehicle, Mr. Robinson, was subsequently referred to another law firm for representation. *See id.* at ¶ 26. The King Firm filed a personal-injury lawsuit on behalf of the three passengers. *See id.* The driver of the 18-wheeler, Mr. Ryan, was deposed in connection with the lawsuit, and he testified that the

5

driver of the Tahoe "punched the gas" and intentionally crashed into the side of his truck. *See* Doc. No. 1 at ¶ 31. However, the four personal-injury plaintiffs, who were also deposed, testified to the contrary, that the 18-wheeler changed lanes and side-swiped the Tahoe. *See id.* at ¶¶ 28–29.

In June 2019, with trial approaching, C.R. England filed a motion to continue the personal-injury trial based on evidence of "potential fraud" in the lawsuit that it wished to investigate further. *See* Doc. No. 1 at ¶¶ 39–40. C.R. England explained that it had "confirmed that this case is the subject of a fraud investigation by Federal Bureau of Investigation, State Police, and U.S. Attorney's office."[1] C.R. England further suggested that the case "fits a pattern of a long line of fraudulent trucking accident cases."[2] However, C.R. England's request for a continuance was denied, and the parties proceeded to mediation. *See* Doc. No. 1 at ¶ 44–45. C.R. England and its insurer, ACE American, agreed to settle the claims of all four plaintiffs for a total of $4,725,000, plus mediation costs. *See id.* at ¶ 45.

## II.    The subsequent federal indictments and guilty pleas

On October 16, 2020, the four plaintiffs in the October 13, 2015 accident (Anthony Robinson, Audrey Harris, Jerry Schaffer, and Keishira Robinson) were indicted for mail fraud and conspiracy to commit mail fraud, based on allegations that they intentionally staged the accident. *See* Doc. No. 1 at ¶ 9. On December 17, 2020, all four pleaded guilty to conspiracy to commit mail

---

[1] *See* Exhibit 1, Motion to Continue, at 1. Because the Motion to Continue is referred to in the Complaint and is central to C.R. England's claims, *see* Doc. No. 1 at ¶¶ 39–44, it is properly considered in connection with this Rule 12(b)(6) motion. *See Walker*, 938 F.3d at 735. Alternatively, the Motion to Continue may be considered because it is a matter of public record, having been filed on the public docket in state court. *See Davis*, 70 F.3d at 372 n.3. The Law Firm Defendants hereby request that the Court take judicial notice of this exhibit, to the extent that such a request is necessary.

[2] *See* Exhibit 1, Motion to Continue, at 1.

fraud. *See id.* at ¶ 53, 92. The factual bases entered in connection with their guilty pleas describe how the staged accident came about. *See id.* at ¶¶ 93(a)–93(q).

Mr. Robinson knew Mr. Labeaud, who lived in the same apartment complex as him, Ms. Harris, and Mr. Schaffer. *See* Doc. No. 1 at ¶¶ 25, 93(b). Mr. Robinson also knew that Mr. Labeaud was involved in staging automobile accidents. *See id.* at ¶ 93(b). On October 13, 2015, the day of the accident, Mr. Robinson met with Mr. Labeaud and another man, Roderick Hickman, "to discuss staging an automobile accident with a tractor-trailer in order to obtain money through fraud." *See id.* Mr. Robinson paid Mr. Labeaud $2,000 for the opportunity to participate in the staged accident. *See id.* at ¶ 93(c). Mr. Robinson then arranged for his wife, daughter, and friend to go for a ride in his Chevy Tahoe. *See id.* "When they initially got in the car, Harris, Schaffer, and Keishira Robinson did not know that they were going to participate in a staged accident." *See id.* Mr. Labeaud and Mr. Hickman then assisted in causing an intentional collision between the Chevy Tahoe and the 18-wheeler driver by Mr. Ryan. *See id.* at ¶¶ 93(c)–93(d).

Notably, whatever legal developments took place after the filing of this lawsuit, the factual bases cited in the complaint do not suggest that Mr. Giles, or anyone from The King Firm, was involved in planning the staged accident. Nor do they suggest that anyone involved in staging the accident ever informed Mr. Giles, or anyone else from The King Firm, that the accident was staged. Nor do they suggest that Mr. Giles, or anyone else from The King Firm, ever instructed them to misrepresent the facts of the accident or their alleged injuries. The factual bases allege only that (1) shortly after the October 13, 2015 accident, Mr. Labeaud called Mr. Giles to state that he had some "fish" for him; (2) Mr. Labeaud brought the four participants in the accident to see Mr. Giles at The King Firm; (3) Mr. Labeaud received a $1,500 check from The King Firm on October 14, 2015; and (4) Mr. Giles and Mr. Labeaud spoke on the phone "approximately three times" on

7

October 13, 2015, and on the days before and after the accident. *See* Doc. No. 1 at ¶¶ 93(e)–93(g). However, C.R. England's own Complaint provides an explanation for the communications with, and payments to, Mr. Labeaud—Mr. Giles and The King Firm were representing Mr. Labeaud in connection with an automobile accident he was involved in over two months earlier, on August 7, 2015. *See* Doc. No. 1 at ¶ 16.

Mr. Labeaud was not indicted in connection with the October 13, 2015 accident. He was, however, indicted in a separate criminal case arising from two other allegedly staged accidents on June 6, 2017, and June 12, 2017, involving Lucinda Thomas, Mary Wade, Judy Williams, Dashontae Young, Genetta Israel, Mario Solomon, and Larry Williams. *See* Doc. No. 1 at ¶ 11. Mr. Labeaud ultimately pleaded guilty to conspiracy to commit wire fraud. *See id.* at ¶¶ 11, 18. The factual basis for Mr. Labeaud's plea includes no reference to any facts concerning the October 13, 2015 accident. However, it is also a matter of public record that in 2026, Labeaud testified at trial against Jason Giles and The King Firm, LLC.

Mr. Hickman also was not indicted in connection with the October 13, 2015 accident. However, he was indicted in a separate criminal case arising from other allegedly staged accidents on March 27, 2017, and May 17, 2017, involving Lois Russell, James Williams, Tanya Givens, John Diggs, Henry Randle, Ryan Wheaten, Dakota Diggs, Bernell Gale, Marvel Francois, and Troy Smith. *See* Doc. No. 1 at ¶ 12. Mr. Hickman ultimately pleaded guilty to conspiracy to commit wire fraud. *See id.* at ¶¶ 18, 20. The factual basis for Mr. Hickman's plea includes no reference to any facts concerning the October 13, 2015 accident.

## III.   The purported criminal "enterprise" to stage automobile accidents

C.R. England repeatedly alleges throughout its Complaint that the Law Firm Defendants were involved in a criminal "enterprise" that staged more than 150 automobile accidents for the purpose of bringing fraudulent personal-injury claims. *See, e.g.,* Doc. No. 1 at ¶¶ 10. This

allegation is addressed in detail below, in discussing the legal insufficiency of C.R. England's federal RICO claims. The Law Firm Defendants simply note here that, aside from the Defendants in this case who were involved in the October 13, 2015 accident, C.R. England has not adequately alleged that The King Firm represented a single person asserting personal-injury claims in connection with a staged accident—much less that anyone from The King Firm knew any accident was staged or that the plaintiffs' claims were false.

For example, C.R. England refers to lawsuits allegedly arising from eight accidents that occurred in 2017 "at [the] same location" and "in the same manner" as another accident that was the subject of a federal indictment. *See* Doc. No. 1 at ¶ 13. C.R. England alleges that The King Firm represented some of the plaintiffs in these lawsuits, though it does not even bother to identify the specific plaintiffs who were allegedly represented by The King Firm. *See id.* Nor does it allege any specific facts plausibly showing that any of these accidents were staged, that the resulting lawsuits included fraudulent allegations, or that any lawyers were knowing participants in fraud. *See id.*

C.R. England also refers to three lawsuits allegedly filed by Mr. Giles based on accidents that were "similar" to, and in "the same general location" as, the October 13, 2015 accident at issue in the present case. *See* Doc. No. 1 at ¶ 16. Mr. Labeaud was allegedly a plaintiff in one of the cases, and Mr. Hickman was allegedly a plaintiff in another. *See id.* Here again, C.R. England does not allege any specific facts plausibly showing that any of these accidents were staged, that the resulting lawsuits include fraudulent allegations, or that Mr. Giles (or any other lawyer) was a knowing participant in fraud.

And aside from these failed efforts, C.R. England does not even attempt to connect the Law Firm Defendants to any other specific lawsuit allegedly based on a staged accident.

**DISCUSSION**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts do not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quotation omitted). "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

I.      **C.R. England has not adequately alleged any Louisiana state-law fraud or conspiracy claims.**

"Fraud under Louisiana law entails a 'misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.'" *First Am. Bankcard, Inc. v. Smart Business Tech., Inc.*, 178 F. Supp. 3d 390, 401 (E.D. La. 2016) (quoting LA. CIV. CODE art. 1953). "The Fifth Circuit has stated the requisite elements of a fraud claims are: '(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury.'" *Id.* (quoting *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997)). "The intent to deceive is a specific intent." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011).

"[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). The Fifth Circuit "interprets Rule

9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 339 (quotation omitted). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). . . . The plaintiffs must set forth *specific facts* supporting an inference of fraud." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).

      **A.**      **C.R. England's fraud claims fail because it did not rely on the truthfulness of the Defendants' purportedly fraudulent allegations—rather, it vigorously contested those allegations in litigation, going so far as to make public accusations of fraud.**

C.R. England fails to allege that it justifiably relied on any false allegation made by any defendant. Its fraud claim is based on the allegation that the Defendants "made false and misleading statements and representations concerning how the 'accident' at issue occurred," for the purpose of "obtaining an unjust advantage in the personal injury lawsuit" against C.R. England. *See* Doc. No. 1 at ¶ 137. C.R. England alleges that the Defendants acted "with the intent that [C.R. England] would act on the misrepresentations by paying Defendants sums of money in settlement of claims." *See id.* at ¶ 140. C.R. England further alleges that it was injured by paying for the investigation, defense, and settlement of the personal-injury claims filed by the Defendants, among other alleged damages. *See id.* at ¶ 141.

However, C.R. England's fraud claims fail because it did not rely on the truthfulness of any allegedly false statements by the Defendants about how the accident happened. C.R. England did not accept the plaintiffs' allegation in the personal-injury lawsuit as true—its driver said from the day of the incident that he had been intentionally rammed, and C.R. England spent years contesting the case in litigation before ultimately deciding to settle less than one week before trial.

11

This Court considered, and rejected, a fraud claim based on essentially the same theory in *Thomas v. Chambers*, No. 18-cv-4373, a personal-injury lawsuit arising out of a tractor-trailer collision. The defendants in that case filed a counterclaim for fraud, alleging that the accident was staged by the plaintiffs and that the "plaintiffs' petition for damages constitutes a fraudulent misrepresentation under Louisiana law." *See Thomas v. Chambers*, No. 18-cv-4373, 2018 WL 5279122, at *1 (E.D. La. Oct. 24, 2018) (Vance, J.). The defendants further alleged that "as a result of plaintiffs' alleged misrepresentations, they have suffered damages . . . including attorneys' fees and litigation expenses." *See id.* However, the Court held that the defendants' fraud counterclaim was "not legally cognizable" because they could not allege "that they justifiably relied on plaintiffs' alleged misrepresentations." *See id.* at *3. The Court explained: "Any assertion that defendants depended upon or trusted plaintiffs' alleged misrepresentations is facially absurd, because defendants are contesting them in this litigation. It therefore defies comprehension how defendants have justifiably relied on plaintiffs' representations and been injured as a result." *See id.*[3]; *see also Goldman v. Hartford Life & Accident Ins. Co.*, No. 05-cv-2121, 2006 WL 901792, at *5 (E.D. La. Apr. 4, 2006) (Vance, J.) ("[W]ith respect to the remaining fraud allegation, that Halliburton falsely represented that Goldman was a Jones Act seaman to the Department of Labor, Goldman has not alleged that he relied on that statement. Nor can the Court discern how Goldman could have relied on that statement, as he was at that time in an adversarial posture with Halliburton"); *Systems Engineering and Security, Inc. v. Science & Engineering Associates*, Inc., 962 So.2d 1089, 1091 (La. App. 4 Cir. 2007) (to succeed in a claim for intentional/fraudulent

---

[3] The Court subsequently denied the defendants' motion for reconsideration, explaining once again that the defendants' claim is "incompatible with a plausible assertion that they justifiably relied on plaintiffs' alleged misrepresentations." *See Thomas v. Chambers*, No. 18-cv-4373, 2019 WL 485781, at *2 (E.D. La. Feb. 7, 2019).

misrepresentations, the petition must contain allegations of: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury).

Even beyond the inherent contradiction of asserting reliance upon allegations that a defendant is actively contesting in litigation, C.R. England's actions conclusively rebut any suggestion that it accepted the allegations as true. Before agreeing to a settlement, C.R. England argued to the state court that the plaintiffs' claims were potentially fraudulent. Several weeks before trial (and approximately two weeks before it agreed to a settlement), C.R. England filed a motion to continue the trial based on "potential fraud" that it wished to investigate further. *See* Doc. No. 1 at ¶¶ 39–40. C.R. England stated to the court that it had "confirmed that this case is the subject of a fraud investigation by Federal Bureau of Investigation, State Police, and U.S. Attorney's office."[4] C.R. England objected that it was "headed to trial with newly acquired knowledge of potential fraud in a serious case where liability is contested."[5] C.R. England also admitted in that motion that the employee driving its truck, Ronan Ryan, had "maintained, from his time talking to the police, and through his deposition, that he believed the other driver in this accident purposefully collided with his vehicle after first coming to a complete stop."[6]

C.R. England's decision to settle the lawsuit *despite actually believing that its allegations were false and fraudulent from the very day the incident happened* is the polar opposite of reliance. Because C.R. England did not rely on any alleged misrepresentation by any of the Defendants, its claims for fraud must be dismissed.

---

[4] *See* Exhibit 1, Motion to Continue, at 1.

[5] *See* Exhibit 1, Motion to Continue, at 1.

[6] *See* Exhibit 1, Motion to Continue, at 3. In the Complaint, C.R. England alleges that Mr. Ryan testified in his deposition that he "totally disagreed" with the version of the facts as stated by the personal-injury plaintiffs, and that the driver of the Tahoe "punched the gas" and intentionally crashed into his truck. *See* Doc. No. 1 at ¶¶ 31–32.

**B.** **C.R. England's state-law conspiracy claims must be dismissed for failure to adequately allege any underlying tort.**

C.R. England also asserts a claim for conspiracy to commit fraud, citing Louisiana Civil Code article 2324. *See* Doc. No. 1 at ¶¶ 145–148. However, "Louisiana law does not create a self-standing tort of conspiracy; rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing the plaintiff's injury." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016). "In other words, a civil conspiracy is simply a means to impute liability for an underlying tort." *Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 645 (E.D. La. 2019). "To establish the existence of a civil conspiracy, a plaintiff must show that an agreement existed to commit an illegal or tortious act, *which act was actually committed*, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result." *Id.* (emphasis added). As explained above, C.R. England has not adequately alleged any claim for fraud. For the same reasons, its conspiracy claim must be dismissed for failure to adequately allege the commission of an underlying tort.

**II.** **C.R. England has not adequately alleged any civil RICO claims.**

"The Racketeer Influenced and Corrupt Organizations Act (RICO) . . . creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). "Section 1962, in turn, consists of four subsections." *Id.* at 497. "RICO claims under all four subsections necessitate: 1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993) (quotation omitted).[7]

---

[7] C.R. England's RICO claims are asserted under 18 U.S.C. § 1962(c), which requires proof that the defendant was "employed by or associated with [an] enterprise" and that the defendant "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs through a pattern of

For RICO purposes, an "enterprise" may be a "legal entity" or a "union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). C.R. England does not identify any legal entity as the alleged RICO "enterprise" for purposes of its claims. Instead, C.R. England alleges that all of the Defendants in this case—the three Law Firm Defendants and the six individuals who were allegedly involved in staging the October 13, 2015 accident—make up an "association-in-fact enterprise." *See* Doc. No. 1 at ¶¶ 102, 111.

"To prove a 'pattern of racketeering activity,' a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Svcs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139–40 (5th Cir. 1992). "Establishing the minimum number of predicates . . . is not sufficient to establish a pattern; the racketeering predicates must be *related* and amount to or pose a threat of *continued* criminal activity." *Id.* at 1140. As this Court has explained, the "pattern of racketeering activity" must be demonstrated solely through RICO predicate acts—other acts that may be wrongful, illegal, or fraudulent in some way are irrelevant to the inquiry. *See Reuther v. Smith*, No. 01-cv-3625, 2003 WL 21406184, at *3 (E.D. La. June 17, 2003) (Vance, J.).

The predicate acts of racketeering alleged by C.R. England are mail fraud and wire fraud. *See* Doc. No. 1 at ¶ 127 (citing 18 U.S.C. § 1341 and 18 U.S.C. § 1343). "Federal Rule of Civil Procedure 9(b)'s pleading requirements apply to RICO claims resting on allegations of fraud, and a plaintiff must plead his fraud-based RICO claims with particularity." *Robinson v. Standard Mortgage Corp.*, 191 F. Supp. 3d 630, 640 (E.D. La. 2016) (Vance, J.). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as

---

racketeering activity." C.R. England also asserts a claim under 18 U.S.C. § 1962(d), alleging a conspiracy to violate § 1962(c). *See* Doc. No. 1 at ¶¶ 132–133.

well as the identity of the person making the misrepresentation and what he obtained thereby."

*Tel-Phonic*, 975 F.2d at 1139.

> A.    **C.R. England has not adequately alleged direct and proximate causation because no one was defrauded by the alleged predicate acts of mail fraud and wire fraud.**

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quotation omitted); *see also id.* at 13 ("Our precedent makes clear . . . that the compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts.") (quotation omitted, cleaned up). As explained above, C.R. England has not shown that it—or anyone else—relied on the Defendants' allegedly fraudulent misrepresentations to their detriment. For the same reasons, C.R. England cannot show that it was harmed by any alleged acts of mail fraud or wire fraud by the Defendants. C.R. England's civil RICO claims therefore must be dismissed for failure to adequately allege causation.

To be clear, the federal offenses of mail fraud and wire fraud differ in at least one important way from the common-law tort of fraud. Unlike a fraud claim at common law (and under Louisiana law), mail fraud and wire fraud do not require any "showing of first-party reliance." *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 642 (2008). In *Bridge*, plaintiffs who regularly bid on tax liens in Cook County, Illinois, filed a civil RICO suit against their competitors, alleging that the competitors committed mail fraud by filing false attestations with the county that allowed them to obtain more than their proper share of the tax liens and deprive the plaintiffs of liens they otherwise would have obtained. *See Bridge*, 553 U.S. at 642–44. The district court dismissed the RICO claims on the ground that the plaintiffs "were not recipients of the alleged misrepresentations and, at best were indirect victims of the alleged fraud." *See id.* at 645. The

16

Supreme Court disagreed, holding that first-party reliance is not an element of a RICO mail-fraud claim and that the plaintiffs had adequately alleged that their injuries were directly and proximately caused by mail fraud. *See id.* at 657–58.

At the same time, however, the Supreme Court cautioned that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." *Bridge*, 553 U.S. at 658.

> In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. If, for example, the county had not accepted petitioners' false attestations . . . and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized. In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause. Thus, for example, if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury.

*Id.* at 658–59. Thus, as this Court has recognized, "[i]n general, 'a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation.'" *Robinson*, 191 F. Supp. 3d at 645 (quoting *Bridge*, 553 U.S. at 659).

A plaintiff who does not rely on a defendant's alleged misrepresentation, cannot have an injury caused by the misrepresentation. *Lewis v. Danos*, 83 F.4th 948, 957 (5th Cir. 2023) (RICO plaintiff "can only establish causation by showing that her injuries were directly caused by the alleged predicate acts. . . . As for the alleged mail fraud and wire fraud, Lewis did not rely on misrepresentations from Defendants to her detriment"). While the mere act of settlement of an allegedly fraudulent claim may not by itself break the chain of proximate causation, see *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026), in this case C.R. England contended from the beginning the "accident" was intentionally caused, and shortly before settling publicly stated the

17

accident was being investigated by the government as fraud. Its behavior and litigation position was the opposite of reliance.

C.R. England does not allege that it, or any other person, acted in reliance on the truth of the Defendants' alleged misrepresentations, and the injuries alleged by C.R. England do not flow from anyone's actions in reliance on the truth of the alleged misrepresentations. In essence, C.R. England complains of an alleged scheme to defraud that did not actually succeed in defrauding anyone. This is exactly the situation hypothesized by *Bridge*, *supra* ("the complete absence of reliance may prevent the plaintiff from establishing proximate cause. Thus, for example, if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury").

Because C.R. England has not adequately alleged any injury that was directly and proximately caused by acts of mail fraud or wire fraud, its RICO claims must be dismissed.

**B.      C.R. England has not adequately alleged a "pattern of racketeering activity"**

As noted above, C.R. England's RICO claims rest on alleged predicate acts of mail fraud and wire fraud. However, C.R. England has not adequately alleged *any* acts of wire fraud. And even assuming for the sake of argument that any individual acts of mail or wire fraud are adequately alleged, those acts lack the continuity required to demonstrate a "pattern of racketeering activity."

**1.           C.R. England has not adequately alleged any predicate acts of wire fraud.**

Wire fraud requires a transmission "by means of wire, radio, or television communication in interstate or foreign commerce." *See* 18 U.S.C. § 1343. "[T]he statute requires that the wire communication cross state lines." *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988); *see also*

*United States v. Izydore*, 167 F.3d 213, 219–20 (5th Cir. 1999) (reversing convictions for wire fraud for lack of evidence "that the telephone calls at issue in those counts crossed state lines"); *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 511–12 (5th Cir. 1990) (affirming summary judgment against plaintiff on RICO wire fraud claims for lack of evidence that telephone calls were interstate); *United States v. Biyikioglu*, 652 F. App'x 274, 281 (5th Cir. 2016) (reversing convictions for wire fraud and explaining that "[t]he use of the Internet alone is insufficient to establish that [the defendant] sent the information . . . across state lines").

The Complaint alleges generally that the "pattern of racketeering activity" is "based upon the repeated interstate telephone communications, email communications, transfer of funds by wire and check, and use of the postal service and/or private or commercial interstate carriers, which crossed state lines." Doc. No. 1 at ¶ 127. However, the Complaint does not specifically identify any interstate wire communications. Reviewing the Complaint in its entirety, it is clear that C.R. England has not adequately alleged *any* interstate wire communications. Specifically:

- C.R. England alleges that James Courtenay at The King Firm (who is not alleged to be part of the RICO "enterprise" or conspiracy) exchanged emails with C.R. England's counsel in the state-court lawsuit about settlement, about Ms. Harris's upcoming surgery, and about C.R. England's allegations of fraud. *See* Doc. No. 1 at ¶¶ 36–39, 41, 45, 75. However, C.R. England does not specify the locations of the senders or recipients of these emails or otherwise allege any facts that would demonstrate wire communications that crossed state lines.[8]

- C.R. England alleges that Mr. Labeaud called Mr. Giles on the phone after the October 13, 2015 accident and told Mr. Giles that he "had some 'fish' for [him]." *See* Doc. No. 1 at ¶ 93(e). C.R. England also alleges that Mr. Giles spoke to Mr. Labeaud on the phone "approximately three times" on the day of the accident, October 13, 2015, and "on the days before and after the accident." *See id.* C.R. England further alleges that Mr. Labeaud had an unspecified number of telephone communications with Mr. Giles, Mr. Milazzo, and Mr. Courtenay on unspecified dates in 2017, about unspecified topics. *See* Doc. No. 1 at ¶ 12. Because C.R.

---

[8] The public docket in the state-court lawsuit reflects that C.R. England was represented, at different times, by two Louisiana law firms—the Ostendorf Tate Barnett firm in New Orleans, and the Irwin Fritchie firm in Baton Rouge.

England alleges that Mr. Giles and Mr. Labeaud were both in New Orleans on October 13, 2015, any communications on or around that date presumably would not have crossed state lines. As to the remaining telephone calls, C.R. England does not specify the locations of any of the participants or otherwise allege any facts that would demonstrate interstate wire communications.

- C.R. England alleges that Anthony Robinson called Keishira Robinson ten minutes after the accident on October 13, 2015, and that Audrey Harris called to 911 report the accident after it happened. *See* Doc. No. 1 at ¶¶ 51, 93(e). Based on C.R. England's allegations, Anthony and Keishira Robinson were both in New Orleans at the time of these calls, *see id.* at ¶ 51, and the 911 operator/dispatcher was presumably located in Louisiana.

Because C.R. England has not adequately alleged any interstate wire communications, there are no alleged instances of wire fraud to support the alleged "pattern of racketeering activity."[9]

> **2.**       **Even assuming that C.R. England has adequately alleged two acts of mail fraud in connection with the Harris lawsuit, that is insufficient as a matter of law to demonstrate a "pattern of racketeering activity."**

The Complaint does not identify the specific alleged acts of mail fraud on which C.R. England relies to allege a "pattern of racketeering activity." *See* Doc. No. 1 at ¶¶ 126–128. Mail fraud requires, among other things, that the defendant make "use of the mails." *See, e.g.*, *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006); 18 U.S.C. § 1341. Reviewing the Complaint in its entirety, C.R. England alleges only two transmittals by mail or private carrier that could even arguably support claims for mail fraud. Specifically, C.R. England alleges that in October 2016, James Courtenay and Toni Arnona (neither of whom is alleged to be a member of the RICO "enterprise" or conspiracy) mailed service copies of the petition and cross-claim in the state-court

---

[9] C.R. England repeatedly refers to the fact that Anthony Robinson, Audrey Harris, Jerry Schaffer, and Keishira Robinson were indicted for mail fraud and conspiracy to commit mail fraud, and that all four pleaded guilty to conspiracy to commit mail fraud. *See* Doc. No. 1 at ¶¶ 9, 15, 18, 45, 50–71, 80–87, 89–90, 92–95, 97, 101–102, 125, 128, 144, 151. C.R. England mentions nothing about wire fraud in connection with this alleged accident.

lawsuit to Ronan Ryan, the driver of the 18-wheeler. *See* Doc. No. 1 at ¶ 26. C.R. England also alleges that both it and its insurer, ACE American, sent settlement checks to C.R. England's Louisiana counsel by FedEx in July 2019. *See* Doc. No. 1 at ¶¶ 76, 93(n).

Even assuming for the sake of argument that these allegations state cognizable claims for mail fraud, these two discrete acts, both of which occurred in the context of a single allegedly fraudulent lawsuit, cannot establish a "pattern of racketeering activity" for RICO purposes. A "pattern of racketeering activity" requires "continuity," which "may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015) (quotations omitted). The Fifth Circuit has "held that, where all of the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct 'did not constitute or threaten long-term criminal activity.'" *See id.* (quoting *In re Burzynski*, 989 F.2d 733, 742–43 (5th Cir. 1993)).

Similarly, this Court has explained that "the continuity requirement is less likely to be met when the defendant is alleged to be involved in only one fraudulent scheme with a closed group of targeted victims." *Reuther v. Smith*, No. 01-cv-3625, 2003 WL 1955167, at *10 (E.D. La. Apr. 22, 2003) (Vance, J.). In *Reuther*, the plaintiff asserted a RICO claim alleging that the defendant committed multiple counts of mail fraud by mailing false letters to the Louisiana Secretary of State in an attempt to seize control of a corporation. *See id.* at *9–10. However, the Court granted summary judgment to the defendant, holding that there was no pattern of racketeering activity because the "scheme has a narrow purpose" and "targets a closed group of victims." *See id.* at *10.

In *Conry v. Daugherty*, No. No. 10-cv-4599, 2011 WL 4807892, at *2–3 (E.D. La. Oct. 11, 2011) (Vance, J.), this Court dismissed the plaintiff's RICO claims on the pleadings after

21

finding that the "multiple acts of mail fraud, wire fraud and extortion" alleged by the plaintiff did not establish the continuity required to show a "pattern of racketeering activity." The Court explained:

> [T]he underlying event remains a single real estate transaction. Plaintiff has tried to flesh out the few predicate acts—occurring over a few months on two different occasions—into 22 separate ones. Yet they all correspond to the same sale of the same piece of property, and the efforts to collect on that single debt owed.

*Id.* at *3.

In *Castrillo v. Am. Home Mortgage Servicing, Inc.*, 670 F. Supp. 2d 516, 529–31 (E.D. La. 2009) (Vance, J.), the plaintiff asserted a RICO claim alleging that the defendant committed multiple acts of "mail fraud, wire fraud, bank fraud, state law fraud/forgery, state law theft, state law theft of identity, and transportation of stolen property" in connection with a foreclosure based on an allegedly forged promissory note. This Court dismissed the claims on the pleadings, concluding that the alleged predicate acts involved "a single, discrete transaction" and therefore did not demonstrate a "pattern of racketeering activity." *See id.* (quotation omitted).

Although C.R. England alleges numerous times that the Defendants in this case (including the Law Firm Defendants) were involved in a wide-ranging "enterprise" to stage more than 150 accidents, C.R. England has failed to adequately allege even a single act of mail or wire fraud that occurred in connection with any other accident.

**C.    C.R. England has not adequately alleged the existence of a RICO "enterprise."**

**1.      An "association-in-fact enterprise" must have continuity of structure and personnel, longevity, and an existence that is separate from the alleged racketeering acts that it commits.**

"Continuity or the ongoing nature of an association in fact is the linchpin of enterprise status." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991) (quotation omitted). "The enterprise must have continuity of its structure and personnel, which links the

defendants, and a common or shared purpose." *Id.* Indeed, the plaintiff is "required to show that the enterprise *as a whole* functioned as a continuing unit." *Id.* (quotation omitted, emphasis added). "An association-in-fact enterprise must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts." *Zastrow*, 789 F.3d at 562 (quotation omitted); *see also Calcasieu*, 943 F.2d at 1462 ("[P]roof of a pattern of racketeering activity does not necessarily establish a RICO enterprise."). An association-in-fact enterprise must also have "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The Fifth Circuit has explained: "An 'association-in-fact' enterprise perhaps could have been interpreted broadly to embrace any cooperative endeavor by two or more persons, without regard to its duration—thus embracing even a single transaction. Mindful of the wisdom embodied in the federal structure of our nation, this circuit has eschewed this course." *Burzynski*, 989 F.2d at 743. Accordingly, the Fifth Circuit has repeatedly dismissed RICO claims as a matter of law for failure to adequately establish an association-in-fact enterprise.

For example, in *Burzynski*, a doctor alleged that an insurance company (Aetna) conspired with a law firm, a litigation consultant, and medical-review company to avoid paying claims for his experimental cancer treatments and put him out of business. *See Burzynski*, 989 F.2d at 737–38, 743–44. These acts allegedly occurred over a five-and-a-half-year period in connection with a lawsuit brought against Aetna. *See id.* The Fifth Circuit held that this alleged association to commit wrongdoing in connection with the defense of a single lawsuit "lack[ed] the needed continuity" to form an association-in-fact enterprise. *See id.* at 744. Accordingly, the Fifth Circuit affirmed the Rule 12(b)(6) dismissal of the plaintiff's RICO claims. *See id.*

23

Similarly, in *Zastrow*, the owner of an automobile-repair company alleged that a Mercedes-Benz dealer and its lawyers harmed his business in retaliation for unfavorable expert testimony that he gave in a lawsuit against the Mercedes-Benz dealer. *See Zastrow*, 789 F.3d at 558. The Fifth Circuit held that the plaintiff had merely alleged "an enterprise created by the alleged racketeering activity itself," which was "obviously not sufficient to plead the existence of an enterprise separate and apart from the pattern of racketeering activity in which it engages." *See id.* at 562 (quotation omitted). The Fifth Circuit therefore affirmed the summary judgment against the plaintiff on his RICO claims. *See id.*

Additionally, in *Whelan v. Winchester Production Co.*, 319 F.3d 225, 226–27 (5th Cir. 2003), owners of royalties in gas wells asserted RICO claims against two gas companies (Winchester and Westchester), their officers and attorneys, and another company (Dorsett). The plaintiffs alleged that these defendants had formed an association-in-fact enterprise for the purpose of defrauding the plaintiffs of their royalty payments. *See id.* at 229.[10] The Fifth Circuit affirmed summary judgment against the plaintiffs on their RICO claims, explaining that they had not demonstrated a RICO "enterprise." *See id.* at 229–30. Although there was evidence connecting the defendants "in the commission of predicate acts," that evidence "fail[ed] to demonstrate the existence of an association separate from the predicate acts." *See id.* at 230. Moreover, "[t]he few transactions between Dorsett and the Winchester defendants supported by summary judgment evidence [were] insufficient to demonstrate the required continuity" for an association-in-fact enterprise. *See id.*

---

[10] The challenged actions allegedly began in 1987 and ended "at some point between 1991 and 1993." *See Whelan*, 319 F.3d at 227.

24

Moreover, by pleading that the Law Firm Defendants acted as legal counsel in one or more cases, without any identifiable structure of an alleged organization, or function beyond that, C.R. England has merely pled that the law firm tended to its own affairs, even if unlawfully. Without specific pleading to show how this amounted to conduct of the affairs of an "enterprise" this is insufficient under RICO. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.")

A cognizable RICO enterprise must exist for purposes other than just to commit predicate acts. An association-in-fact must exist for purposes other than just to commit predicate acts. *Crosswell v. Martinez*, 120 F.4th 177, 185-86 (5th Cir. 2024). C.R. England has not pleaded such an association. Nor has it adequately pleaded the structure of such an association.

**2.          C.R. England's factual allegations do not show that the nine Defendants in this case formed an ongoing, long-lived criminal enterprise with continuous structure and personnel—in fact, they affirmatively negate any such inference.**

C.R. England does not identify any legal entity as the alleged RICO "enterprise" for purposes of its claims. Instead, C.R. England alleges that all of the Defendants in this case—the three Law Firm Defendants and the six individuals who were allegedly involved in staging the October 13, 2015 accident—make up an "association-in-fact enterprise." *See* Doc. No. 1 at ¶¶ 102, 111. C.R. England alleges that the purpose of the enterprise was "to pursue fraudulent bodily injury claims against tractor trailer companies, drivers and their insurers," who were the "victims of . . . numerous staged automobile accidents." *See id.* at ¶¶ 124–125. C.R. England alleges that "[t]he Enterprise has an identifiable structure, with each member fulfilling a specific role to carry out and facilitate its purpose." *See id.* at ¶ 112. C.R. England further alleges that "the Defendants' pattern

25

of racketeering activity has involved at least one hundred (100) staged accidents involving multiple occupants in each accident within this specific Enterprise alone." *See id.* at ¶ 128.

However, C.R. England's specific factual allegations provide no support whatsoever for the suggestion that these nine Defendants formed an organized, ongoing "enterprise" dedicated to profiting from staged auto accidents. Indeed, the specific factual allegations affirmatively negate any such suggestion. C.R. England does not allege that the four plaintiffs involved in the October 13, 2015 accident (Anthony Robinson, Audrey Harris, Jerry Schaffer, and Keishira Robinson) were ever involved in any other staged accident, either before or after. And even with respect to that one accident, the allegations reflect that the three passengers (Ms. Harris, Mr. Schaffer, and Ms. Robinson) were initially unwitting participants—*even as they got into the car on the day of the accident*, they did not know what was going to happen. *See* Doc. No. 1 at ¶ 93(c).

Furthermore, the allegation that the "enterprise" consisted of these nine Defendants is contradicted repeatedly throughout the Complaint by inconsistent allegations that the "enterprise" involved a shifting assortment of dozens of other participants. For example:

- The Complaint alleges that 33 individuals have already been indicted as part of the "criminal enterprise" that has "conducted at least one hundred and fifty (150) known separate staged accidents involving tractor trailers in and around the New Orleans area between 2015 and 2018." *See* Doc. No. 1 at ¶ 10. C.R. England also anticipates that "many more indictments will be filed, . . . identifying additional actors and participants in this criminal enterprise." *See id.*

- The Complaint alleges that Mario Solomon and Cornelius Garrison were "major players" or "ringleaders" in "the criminal enterprise to fraudulently stage accidents." *See* Doc. No. 1 at ¶¶ 20–21. However, neither Mr. Solomon nor Mr. Garrison is listed as an alleged member of the RICO "enterprise" in the present case. Nor is either of them alleged to have any involvement in the October 13, 2015 accident.

- The Complaint refers to two allegedly staged accidents that occurred on October 15, 2015, and September 6, 2017, which resulted in the indictment of nine people. *See* Doc. No. 1 at ¶ 14. None of these people is alleged to be a part of the RICO "enterprise" in the present case, and C.R. England does not allege that any of the Law Firm Defendants had anything to do with these accidents. The lack of any

connection to the October 15, 2015 accident is particularly notable, because it occurred only two days after the accident at issue in the present case.

- The Complaint refers to two allegedly staged accidents that occurred on June 6, 2017, and June 12, 2017, which resulted in the indictment of eight people. *See* Doc. No. 1 at ¶ 11. C.R. England does not allege that any of the Law Firm Defendants had anything to do with these accidents. In fact, of the nine Defendants in the present case, who allegedly form a RICO "enterprise," only one of them (Damian Labeaud) is alleged to have been involved in these accidents. *See id.*

- The Complaint refers to three allegedly staged accidents that occurred on March 27, 2017, and May 17, 2017, which resulted in the indictment of 11 people. *See* Doc. No. 1 at ¶ 12. Only one of those people (Roderick Hickman) is alleged to be a part of the RICO "enterprise" in the present case.

- The Complaint refers to eight accidents that allegedly occurred in 2017 "at the intersection of Calliope and Tchoupitoulas/Hwy 90 in New Orleans," in which "one or more of the parties in each 'accident' were either represented by [Patrick] Keating and/or The King Firm." *See* Doc. No. 1 at ¶ 13. C.R. England implies, with no factual support whatsoever, that these accidents were staged. *See id.* Of the 27 plaintiffs who were allegedly involved in these accidents, none are alleged to be part of the RICO "enterprise" in the present case. *See id.*

C.R. England's attempt to link the October 13, 2015 accident to dozens of other allegedly staged accidents in the New Orleans area over a period of years is understandable, because a group of defendants who allegedly conspired to stage a single auto accident clearly would not constitute a RICO "enterprise." But the facts alleged by C.R. England, even fully accepted as true, fatally undermine this attempt. The vague and amorphous "criminal enterprise and fraud scheme to stage numerous accidents" alleged by C.R. England, *see* Doc. No. 1 at ¶¶ 11, 12, 14, 15, 17, has no "continuity of . . . structure and personnel" or "longevity." *See Calcasieu*, 943 F.2d at 1462; *Boyle*, 556 U.S. at 946. Indeed, of the nine Defendants in the present lawsuit, not a single one (much less all nine) is alleged to have been involved in all of the other accidents allegedly staged by the "enterprise."

27

### D.    C.R. England's RICO conspiracy claim must be dismissed for failure to adequately allege any substantive RICO violation under § 1962(c).

In addition to its claim under § 1962(c), C.R. England asserts a claim under § 1962(d), alleging that the Defendants conspired to violate § 1962(c). *See* Doc. No. 1 at ¶¶ 132–133. However, "[t]he failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [the plaintiff] cannot plead a conspiracy to violate either section." *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (quotation omitted); *see also North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since North Cypress failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)."); *Robinson*, 191 F. Supp. 3d at 646 ("Because Robinson's allegations fail to state a substantive RICO claim on which relief may be granted, her conspiracy claim fails as well.").

Further, the complaint fails to plead an agreement to commit at least two predicate acts, rather than merely pleading the defendants "conspired," so it fails on that ground as well. *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992).

For the reasons explained above, C.R. England has failed to adequately plead any RICO claim under § 1962(c). Accordingly, its RICO conspiracy claim must be dismissed as well.

### III.    C.R. England has not adequately alleged any claims under the Louisiana Racketeering Act.

In addition to federal RICO claims, C.R. England asserts claims for alleged violations of the Louisiana Racketeering Act. *See* Doc. No. 1 at ¶¶ 152–175. The Louisiana Racketeering Act, which is very similar to the federal RICO Act, contains the following prohibitions:

- Subsection A prohibits any person who has "knowingly received any proceeds derived . . . from a pattern of racketeering activity" from using or investing those proceeds to establish or operate an "enterprise," or to acquire any right or interest in immovable property.

28

- Subsection B prohibits any person from knowingly acquiring or maintaining "any interest in or control of any enterprise or immovable property" through a "pattern of racketeering activity."

- Subsection C prohibits any person "employed by, or associated with, any enterprise" from conducting or participating in that "enterprise" through a "pattern of racketeering activity."

- Subsection D prohibits any person from conspiring or attempting to violate the provisions of A, B, or C.

*See* LA. REV. STAT. § 1353. Thus, all claims under the Louisiana Racketeering Act require proof of an "enterprise" and a "pattern of racketeering activity."

As in the federal RICO Act, an "enterprise" includes a "group of individuals associated in fact." *See* LA. REV. STAT. § 1352(B). "An association-in-fact enterprise must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Agrifund, LLC v. Radar Ridge Planting Co.*, 278 So. 3d 1025, 1042 (La. App. 2nd Cir. 2019).[11] "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *State v. Touchet*, 759 So. 2d 194, 197 (La. App. 3rd Cir. 2000).

"Pattern of racketeering activity" is defined as "at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents." *See* LA. REV. STAT. § 15:1352(C). Because the Louisiana Racketeering Act "was apparently patterned after [the federal RICO Act], federal decisions in this area are persuasive." *State v. Nine Sav. Accounts*, 553 So. 2d 823, 825 (La. 1989). However, the Louisiana Racketeering Act does differ

---

[11] Reversed in part on other grounds by *Agrifund, LLC v. Radar Ridge Planting Co.*, 283 So. 3d 492 (La. 2019).

29

from the federal RICO Act in at least one important way. The Louisiana Racketeering Act defines "racketeering activity" by reference to a list of Louisiana crimes that does not correspond to the list of federal RICO predicate acts. *Compare* LA. REV. STAT. § 15:1352(A) *with* 18 U.S.C. § 1961(1).

A.    **C.R. England has not even attempted to allege any predicate act that would constitute "racketeering activity" under the Louisiana Racketeering Act.**

The only "pattern of racketeering activity" alleged in the Complaint is based on alleged violations of "the Federal Wire Fraud Statute, . . . Title 18, United States Code, Section 1343" and the "Federal Mail Fraud Statute, . . . Title 18, United States Code, Section 1341." *See* Doc. No. 1 at ¶ 104; *see also id.* at ¶ 127. Although these offenses (if proven) are predicate acts constituting "racketeering activity" under the *federal* RICO statute, they *do not* constitute "racketeering activity" as defined in the Louisiana Racketeering Act. *See* LA. REV. STAT. § 15:1352(A). Nor does the Louisiana Racketeering Act include any state-law offenses that are analogous to mail fraud or wire fraud.

So C.R. England has failed to even name a single predicate act under the Louisiana Racketeering Act that was allegedly committed by the Defendants—much less adequately allege facts plausibly showing that the Defendants engaged in a pattern of committing such acts.

B.    **C.R. England has not adequately alleged the existence of a RICO "enterprise."**

As explained above, C.R. England has not adequately alleged the existence of an "enterprise" within the meaning of the federal RICO Act. The Louisiana Racketeering Act has adopted a substantially similar, if not identical, definition of "enterprise." *See, e.g.*, *Agrifund*, 278 So. 3d at 1042 (requiring an "association-in-fact enterprise" to have "at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose"); *Touchet*, 759

30

So. 2d at 197 (explaining that an "enterprise" must be "an entity separate and apart from the pattern of activity in which it engages"). Accordingly, for the same reasons stated above, C.R. England has failed to adequately allege an "enterprise" under the Louisiana Racketeering Act.

**C.    C.R. England's bare-bones allegations, which merely track the statutory language without providing explanation or factual detail, do not adequately allege the other elements of its claims under the Louisiana Racketeering Act.**

LA. REV. STAT. § 15:1353(A) requires a showing that the defendant used proceeds derived from a "pattern of racketeering activity" establish or operate an "enterprise" or to acquire a right or interest in immovable property. However, the Complaint does not specifically identify any "proceeds" that were "derived, directly or indirectly, from a pattern of racketeering activity." *See id.* Nor does the Complaint allege facts demonstrating that any such proceeds were used to establish or operate an "enterprise" or acquire any right or interest in immovable property. *See id.*; *see also State v. Thibodeaux*, 313 So. 3d 445, 461 (La. App. 3rd Cir. 2021) (reversing conviction because, "[a]lthough the record reflects the defendant received a certain amount of proceeds from his activities, there is no evidence that he used them in an enterprise pursuant to ongoing racketeering activity"). Instead, C.R. England merely recites the language of the statute. *See* Doc. No. 1 at ¶¶ 153, 165. That is insufficient to satisfy its pleading burden.

Additionally, LA. REV. STAT. § 15:1353(B) requires a showing that the defendant used a "pattern of racketeering activity" to knowingly "acquire or maintain" an "interest in or control of any enterprise or immovable property." However, the Complaint does not include any alleged facts that would satisfy these elements or any explanation as to how these elements are satisfied. Even beyond the myriad other defects in pleading an "enterprise," C.R. England does not include any allegations at all about "control" of the enterprise, or how any alleged member of the enterprise acquired or maintained his or her "interest" in the enterprise. And there are no factual allegations

31

regarding immovable property at all. Here again, C.R. England merely recites the language of the statute, which is insufficient to satisfy its pleading burden. *See* Doc. No. 1 at ¶¶ 157, 169.

## IV.     The Settlement of the State Court Lawsuit Bars This Action

In addition to all the reasons asserted above, res judicata and preclusion by judgment bar this lawsuit, as well as the legal effects of compromising a disputed claim. C.R. England voluntarily settled the state court lawsuit brought against it by the present defendants in which they were represented by The King Firm, LLC. C.R. England asserted that the claimants had intentionally rammed their driver, from the inception of the claim to the end. C.R. England even asserted, near the scheduled trial date, that it was aware that federal law enforcement was investigating the case as fraudulent. Yet despite that, C.R. England made the decision to settle the case rather than to defend it. The lawsuit against C.R. England was dismissed with prejudice, which had the "effect of a final judgment of absolute dismissal after trial." La. Code Civ. Proc. art. 1673.

At that point, the judgment became final, and all causes of action C.R. England had were extinguished and merged in the judgment. The plaintiff's choice to resolve the case, despite knowing the existence of a potential fraud claim, dooms its attempt to later sue on the fraud claim. La. R.S. 13:4231 provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1)  If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2)  If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

32

(3)  A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

R.S. 14:4232 provides in relevant part, "A judgment does not bar another action by the plaintiff: (1) When exceptional circumstances justify relief from the res judicata effect of the judgment; (2) When the judgment dismissed the first action without prejudice; or, (3) When the judgment reserved the right of the plaintiff to bring another action." None of these exceptions apply. As mentioned, C.R. England was fully aware that the claim was being investigated as fraudulent at the time it chose to settle.

When C.R. England settled the state court lawsuit, it was compromised, and the doctrine of res judicata applied. In essence, both parties to the settlement had judgment granted in their favor, by mutual agreement. All causes of action existing at the time of final judgment arising out of the transaction or occurrence that was the subject matter of the litigation are extinguished and merged in the judgment. R.S. 13:4231.

This was a compromise under Louisiana Civil Code article 3071. To the extent that C.R. England may argue the claims were fraud, Article 3074 provides that the civil consequences of an unlawful act giving rise to a criminal action may be the object of a compromise. C.R. England was fully aware, as it related to the state court, of the criminal investigation at the time of settlement. A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. Civ. Code art. 3080.

Louisiana Code of Civil Procedure article 425, titled "Preclusion By Judgment," provides, "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." Article 425 A. Failure to abide by Article 425 will result in the

application of res judicata, which is the mechanism for enforcing that article. *Carollo v. Dep't of Transportation & Dev.*, 21-1670 (La. 9/9/2022), 346 So.3d 751.

As The King Firm, LLC, was not a party to the state court lawsuit, R.S. 13:4231 does not apply by its literal terms. However, "Identity of parties can also be satisfied when a privy of one of the parties is involved." *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049, 1054 n.3. Identity of parties exists whenever the same parties, their successors, or others appear, so long as they share the same "quality" as parties. *Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 2001-0993 (La. App. 1st Cir. 8/4/04), 880 So.2d 129, 140, *writ denied*, 2004-2426 (La. 1/28/05), 893 So. 2d 72.  In general this may occur when (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action, who may be considered the "virtual representative" of the nonparty, because the interests of the party and the nonparty are so closely aligned. *Mandalay Oil & Gas*, at 142.

Here, according to C.R. England's lawsuit, The King Firm, LLC, while a nonparty to the original suit, was intimately involved in the alleged wrongdoing, to the extent that it "controlled" the litigation within the meaning of Louisiana res judicata law. Therefore res judicata bars this lawsuit.

C.R. England's choice to settle and resolve the claim, despite publicly stating it knew the case was being investigated as fraud, also had the effect of a final judgment after trial under La. Code Civ. Proc. art. 1673. Its choice to compromise the case resulted in preclusion of any subsequent action based on the same facts. La. Civ. Code arts. 3071, 3074, 3080.

## V.    Reconsideration of Extension of the Stay

Plaintiff filed an Unopposed Motion to Lift the Stay and Re-Set Trial on Plaintiff's Civil Case (R. Doc. 17). The accident at issue is encompassed in the parallel criminal case entitled *United States v. Harris et al*, criminal action 2:24-cr-00105-WBV-JVM, United States District Court, Eastern District. While in paragraph five of this pleadings Plaintiff alleged that the "parallel criminal matter has concluded" (R. Doc. 17), that is not the case.  It is further argued that Plaintiff has conferred with the U.S. Attorney's Office and their office has no objection to the motion.

It is respectfully submitted to the criminal case has not been concluded because substantial issues have been raised in the post-trial motions and the motions are pending resolution before Judge Vitter. Furthermore, Judge Vitter bifurcated the criminal proceedings, and certain defendants are awaiting trial on August 10, 2026.

One of the issues raised by Defendants in post-trial motions is the testimony of Mr. Ryan Harris involved in the murder of a government witness who testified in the recent criminal case involving Jason Giles, The King Firm, and others, and is a key witness in the upcoming criminal trial. One of the post-trial motions in the criminal proceedings raises the issue of allowing Mr. Harris to testify in the recent criminal proceeding with an ineffective "cautionary instruction to the jury" that Harris' testimony "could not be used against Giles and The King Firm." No doubt the anticipated testimony of Mr. Harris in the upcoming proceedings is a clear indication that the criminal case has not been concluded. The post-trial motions are scheduled for July 7, with a sentencing date on September 8, 2026.

It is respectfully submitted that the previously imposed stay should be reinstated or extended, at least until rulings on the post-trial motions, sentencing, and the conclusion of the bifurcated trial in August of 2026.

35

In a similar case[12] involving Danny Keating, a co-conspirator government witness, Judge Ivan Lemelle has extended the stay based on the fact that the criminal proceedings in the <u>Harris</u> case have not been concluded: "<u>The Court questions the finality</u> of the criminal proceeding given that the parties have not addressed whether sentencing has occurred or the possibly of appeal." (emphasis added)

## CONCLUSION

For the reasons set forth above, The King Firm, LLC, respectfully requests that C.R. England's claims against it be dismissed.

Respectfully Submitted,

/s/   Richard T. Simmons, Jr.
**RICHARD T. SIMMONS, JR. (#12089)**
**Hailey, McNamara, LLP**
3445 North Causeway Blvd., Ste. 800
Metairie, Louisiana 70002
Telephone: (504) 261-6516
Facsimile: (504) 836-6565
Email:  rsimmons@hmhlp.com
*Counsel for Defendant, The King Firm, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management and that a copy of the same was either served on all counsel of record by electronic notification or by U.S. Mail, postage pre-paid.

Metairie, Louisiana this 10th day of June 2026.
  /s/ RICHARD T. SIMMONS, JR
  **RICHARD T. SIMMONS, JR.**

---

[12] *Southeastern Motor Freight vs. Danny Keating, Damian Labeaud*, criminal action no. 20-2398, Section B (R. Doc 36).

36